IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| | |
|---|---|
| TONY HANCOCK and F/V, AUNT T., <br><br> Plaintiffs, <br><br> v. <br><br> AS SAMANTA SCHIFFFAHRTSGESELLCHAFT MBH & CO. KG, HARPER PETERSEN HOLDING, AS SAMANTA SCHIFFAHRTS, AS SAMANTA MARINE CORPORATION, CONTCHART GMBH & CO. KG, AHRENKIEL STEAMSHIP GMBH & CO, KG, WILHELMSEN AHRENKIEL STEAMSHIP GMBH & CO. KG AND MAERSK A/S *in personam,* and M/V AS SAMANTA (formerly MAERSK WEYMOUTH), *in rem,* <br><br> Defendants. | **Civil Action No. 4:21CV1486 RBH** <br><br><br><br><br><br><br><br> **AMENDED VERIFIED COMPLAINT** |

**COMES NOW**, the Plaintiffs Tony Hancock and F/V Aunt T (hereinafter "Plaintiffs") by and through their attorneys, complaining of the Defendants and crew employed by the Defendants captioned above, allege and show unto the Court as follows:

**SUBJECT MATTER JURISDICTION**

1.      This is an admiralty and maritime claim within the meaning of Rule 9(h) of the Federal Rules of Civil Procedure.  Plaintiffs invoke the subject matter jurisdiction of this Honorable Court under 28 U.S.C. §1333 (Admiralty) and request a bench trial.

1

## APPLICABLE LAW

2.      This action arises and is governed by the General Maritime Law of the United States and Article III, Section 2 of the Constitution of the United States.

## PARTIES

3.      The Plaintiffs, Tony Hancock, and F/V Aunt T. reside at 13214 Companion Circle S, Jacksonville, Florida 32224.

4.      M/V AS SAMANTA (f/k/a M/V MAERSK WYMOUHTH) (AS), is an ocean going container vessel of Liberian registry, assigned IMO Number 9410260 and doing business as a container vessel in the United States.

5.      Upon information and belief, the Defendant AS SAMANTA SCHIFFFAHRTSGESELLCHAFT MBH & CO KG, at the time of the incident described below, is a legal entity organized under the laws of a state of the United States of America or under foreign law, and is the owner, *pro hac vice*, manager, charterer and/or operator of M/V AS SAMANTA.

6.      Upon information and belief, Defendant HARPER PETERSEN HOLDING, at the time of the incident, is a legal entity organized under the laws of a state of the United States of America or under foreign law, and is the owner *pro hac vice*, manager, charterer and/or operator of M/V AS SAMANTA.

7.      Upon information and belief, the Defendant MAERSK A/S, at the time of incident, is a legal entity organized under the laws of a state of the United States of America or under foreign law, and is the owner *pro hac vice*, manager, charterer and/or operator of M/V AS SAMANTA.

8.      Upon information and belief, the Defendant AS SAMANTA SCHIFFARHRTS, at the time of the incident, is a legal entity organized under the laws of a state of the United States of

America or under foreign law, and is the owner, *pro hac vice*, manager, charterer and/or operator of M/V AS SAMANTA.

9. Upon information and belief, the Defendant CONTCHART GMBH & CO KG, at the time of the incident, is a legal entity organized under the laws of a state of the United States of America or under foreign law, and the owner, *pro hac vice*, manager, charterer and/or operator of the M/V AS SAMANTA.

10. Upon information and belief, the Defendant AHRENKIEL STEAMSHIP GMBH & CO KG, at the time of the incident, is a legal entity organized under the laws of a state of the United States of America or under foreign law, and the owner, *pro hac vice*, manager, charterer and/or operator of M/V AS SAMANTA.

11. Upon information and belief, the Defendant WILHELMSEN AHRENKIEL STEAMSHIP GMBH & CO KG, at the time of the incident, is a legal entity organized under the laws of a state of the United States of America or under foreign law, and the owner, *pro hac vice*, manager, charterer and/or operator of M/V AS SAMANTA.

12. Upon information and belief, the Defendant AS SAMANTA MARINE CORPORATION, at the time of the incident, is a legal entity organized under the laws of a state of the United States of America or under foreign law, and is the owner, *pro hac vice*, manager, charterer and/or operator of M/V AS SAMANTA.

13. Upon information and belief, Defendant Ahrenkiel Steamship GmbH & Co. K.G., is a company doing business and based in Hamburg, Germany, and was on a voyage aboard and in control of the Defendant M/V Maersk Weymouth From Wilmington, North Carolina to Norfolk, Virginia. Its master, or person-in-charge, for this voyage was Vasilev S. Borislaf, who was an employee, agent, or otherwise under the control of the Defendant A.P. Moller-Maerski A/S.

14.     Upon information and belief, Defendant M/V Maersk Weymouth ("MW") is a FIVE HUNDRED SEVENTY-FOUR (574) foot container vessel registered under the flag of the Republic of Liberia. IMO No. 9410260.  This vessel is managed and operated by Ahrenkiel Steamship GmbH & Co. K.G., a company doing business and operating in Hamburg, Germany, during a voyage from Wilmington, North Carolina to Norfolk, Virginia.  Its master, or person-in-charge, for this voyage was Vasilev S. Borislaf, who was an employee, agent, or otherwise under the control of the Defendant A.P. Moller-Maerski A/S.

15.     The officer of the watch, or Third Mate, of the MW during this voyage at the time of the incident was Fladyslav Lipshyts ("Lipshyts").

16.     The Deck Cadet assigned to the bridge of the MW at the time of the incident was Cesar Perez ("Perez") who had been employed on the MW for only five (5) months prior to the incident.

17.     The Able-Bodied Seaman ("Seaman") assigned to the watch during the time of the incident was Paul Sabanal ("Sabanal") from 8:00 pm (EST) to 12:00 am (EST) on the day of the incident.

18.     At all times relevant herein, Defendant MW acted by and through its respective agents, servants, workmen and employees acting within the scope of their authority and employment.

19.     This Honorable Court has jurisdiction to hear this matter as the cause of action alleged herein arose in the State of South Carolina.

20.     All parties, matters, and things herein are within the jurisdiction of this Court and venue is proper in Horry County, South Carolina.

21.     "Savings to suitors" clause of 28 U.S.C.G., § 1331, was designed to permit a damaged party to bring a federal action (in conjunction with a State action), into a State court. 28

4

U.S.C.G., § 1331is broad enough to allow appending of a State Tort Claim to Maritime Claim since the Statute is receptive to exercise of jurisdiction over related claims against closely related parties.

22.     This action is timely commenced pursuant to any applicable Statute of Limitations.

## FACTS

23.     On the night of May 30, 2018, Plaintiffs departed from Crazy Sister Marina ("CSM") in Murrells Inlet, South Carolina at approximately 7:00 pm (EST) to conduct a multi-day fishing trip.  After traveling to the area of desired location, they anchored the vessel ("Aunt T").

24.     Aunt T., owned by Hancock is a THIRTY-THREE foot (33') McMurdo commercial fishing vessel Model No. 100-066439, vessel ID No. 1060156.

25.     Upon anchoring at the desired location, Plaintiff Hancock and crew prepared for sleep to begin fishing the following morning.  The crew ensured that the navigation lights remained on before going to sleep, and that the Global Positioning System ("GPS") was switched to the off position in addition to the other routine vessel preparedness duties.

26.     The Plaintiff Hancock and crew awakened the following morning, May 31, 2018 and proceeded with a routine fishing day. At approximately 7:00 pm (EST) the Plaintiff and crew began to travel to an alternate location approximately TWENTY (20) miles and now located FORTY (40) nautical miles East of North Myrtle Beach, South Carolina.  Upon completion of all routine safety checks, Plaintiff Hancock and crew ensured that the navigation light remained on prior to going to sleep. Current weather conditions were favorable with clear skies and high visibility.

27.     At approximately 8:45 pm (EST) on May 31, 2018, the Master of the AS turned over the bridge control to the officer and third mate.  Accompanying the third mate was Deck Cadet Perez

and AB Sabanal. At 8:00 pm (EST) the Master of the vessel departed from the bridge leaving those now on watch responsible for maintaining proper lookout both visually and electronically as per the Master's orders. Cadet Perez had just recently joined the crew of the AS and was not properly qualified to stand a navigational watch.

28.     AB Sabanal relieved the Seaman previously on watch (AB Sebellita) and took over the navigational and steering duty. At some point during the schedule watch, AB Sabanal departed the bridge to his stateroom for sleep and abandoning his post and leaving the navigational and steering duty to Cadet Perez.

29.     At the time of the incident, the only crew members standing watch were the third mate and the Deck Cadet.

30.     At approximately 11:50 pm (EST), the AS' S-Band radar acquired a "target" believed to be the Aunt T.

31.     At approximately 12:15 am (EST) on June 1, 2018, the bow of the AS collided with the anchor line of the Aunt T. As the anchor line became taught, the Aunt T. experienced secondary impact (hull-to-hull) from the AS. The initial force of this collision abruptly awakened the crew of the Aunt T. to discover their vessel was being dragged by the AS.

32.     Following the initial impact with the anchor line, one of the crew about the Aunt T. was awakened and began to stand. As he attempted standing, the force of the secondary impact to the hull caused him to fall to the deck where he sustained injuries to his left knee.

33.     The crew at the time was frantically trying to cut the anchor line to avoid being pulled under the aft of the AS by its propellers. At this time, the Aunt T. was severely tilting due to being dragged along the side of the AS. The anchor line finally snapped and set the Aunt T. free from the AS to avoid further catastrophe.

34.     During and subsequent to the being released from the AS, the Aunt T. was actively taking on an abundance of water and was sinking due to the breach in the hull. The crew prepared to abandon ship.

35.     Aboard the Aunt T. was a life raft and during the sinking process the crew inflated the raft and placed it into the water with a rope appropriately tied to it.  The emergency position-indicating radio beacon ("Epirb') was collected along with life jackets, satellite phone and other personal items.

36.     A crewmember held the rope attached to the raft as it was in the water as the crew was hastily collecting items. The crewmember holding the rope proceeded to enter the raft first, followed by the injured member and finally the Plaintiff Hancock.

37.     The Plaintiff Hancock and crew immediately activated the Epirb signal and used the satellite phone to contact the U.S. Coast Guard. The Plaintiff Hancock and crew maintained contact with the U.S. Coast Guard every 10-15 minutes.

38.     The U.S. Coast Guard contacted a FIFTY-TWO-foot (52') sailboat named "the Entitled" nearby and instructed the captain of the vessel to alter its course to instead traverse to the location of the Aunt T.'s Epirb signal.  When the sailboat Entitled reached the area of the Epirb the life raft initially could not be located thus a flare was ignited.  The crew of the Entitled located the crew of the Aunt T and transmitted the exact location to the U.S. Coast Guard.

39.     The U.S. Coast Guard was then able to rescue the crew of the Aunt T. via helicopter and transport them to land safely.

40.     Due to the damages sustained from the impacts with the AS, the Aunt T. and its cargo consequently sank and was unable to be salvaged.

41. As a direct result and proximate result of the Defendants' carelessness, negligence, gross negligence, wanton recklessness, and complete disregard for the welfare of other vessels and the waterway navigation rules, Plaintiffs suffered loss and damage to property, lost wages, endured physical and mental anguish and such other and further damages as may be sustained by the Plaintiffs.

## FIRST CAUSE OF ACTION
**(Negligence, Gross Negligence)**

42. The allegations contained in the foregoing paragraphs are incorporated herein by reference as if fully set forth herein.

43. The Defendants had a responsibility to the Plaintiffs to ensure safety protocols were met in accordance with the Amalgamated International & U.S. Inland Navigation Rules for Preventing Collisions at Sea and failed to uphold that responsibility.

44. The Defendants failed to properly train, supervise, maintain proper lookout, provide proper warning, aid and to maintain proper standards of navigation according to the Amalgamated International & U.S. Inland Navigation Rules for Preventing Collisions at Sea.

45. The Defendants failed to uphold safety responsibilities and placed the Plaintiffs in danger.

46. Due to the Defendants' negligence and gross negligence the Plaintiffs have suffered the following damages:

   a. Lost Wages related to damages sustained to the commercial fishing vessel;
   b. The total loss of the fishing vessel Aunt T. as well as cargo and other related possessions;
   c. Physical and mental injury due to the collision;
   d. Loss of opportunity;
   e. Mental anguish resulting from the incident; and
   f. Associated legal fees and costs.

47. Plaintiffs respectfully request this Court to find Defendants liable for negligence and gross negligence and to award damages set forth above, plus incidental, and consequential damages, interest, cost, attorney's fees, and such other damages as the Court may deem just and proper.

## SECOND CAUSE OF ACTION
### (Assault and Battery)

48. The allegations contained in the foregoing paragraphs are incorporated herein by reference as if fully set forth herein.

49. The conduct of the Defendants regarding the incident described caused the Plaintiffs to have a reasonable fear of the Defendants and of bodily harm or death in a manner that which an individual of ordinary reason would experience if placed in the same scenario.

50. The Defendants inflicted unlawful and unauthorized violence upon the Plaintiffs during the incident described.

51. The Defendants inflicted forcible contact upon the Plaintiffs.

52. Due to the Defendants' assault and battery, the Plaintiffs have suffered the following damages:
    a. Lost Wages related to damages sustained to the commercial fishing vessel;
    b. The total loss of the fishing vessel Aunt T. as well as cargo and other related possessions;
    c. Physical and mental injury due to the collision;
    d. Loss of opportunity;
    e. Mental anguish resulting from the incident; and
    f. Associated legal fees and costs.

53. Plaintiffs respectfully request this Court to find Defendants liable for assault and battery and to award damages set forth above, plus incidental, and consequential damages, interest, cost, attorney's fees, and such other damages as the Court may deem just and proper.

## THIRD CAUSE OF ACTION
### (Nuisance)

54. The allegations contained in the foregoing paragraphs are incorporated herein by reference as if fully set forth herein.

55. The actions of the Defendants regarding the incident described caused unreasonable interference into the life of the Plaintiffs which upset the Plaintiffs in a manner that would upset any ordinary person.

56. The actions of the Defendants regarding the incident described caused the value of the fishing vessel to diminish along with temporary and permanent damage to the possessions of the Plaintiffs and the complete loss of the vessel.

57. The Defendants' negligent use of a commercial vessel was the cause of this nuisance to the Plaintiffs, the nuisance and injuries and damages associated with the incident described would not have occurred if not for the negligent actions of the Defendants.

58. Due to the Defendants' nuisance the Plaintiffs have suffered the following damages:

    a. Lost Wages related to damages sustained to the commercial fishing vessel;
    b. The total loss of the fishing vessel Aunt T. as well as cargo and other related possessions;
    c. Physical and mental injury due to the collision;
    d. Loss of opportunity;
    e. Mental anguish resulting from the incident; and
    f. Associated legal fees and costs.

59. Plaintiffs respectfully request this Court to find the Defendants liable for nuisance and to award damages as set forth above plus incidental, consequential damages, interest, costs, attorney's fees, and such other damages as the Court may deem just and proper.

## FOURTH CAUSE OF ACTION
### (Negligent Entrustment)

60. The allegations contained in the foregoing paragraphs are incorporated herein by reference as if fully set forth herein.

61. The Defendants were aware prior to the incident, that the Cadet was unqualified to stand watch or manage the helm given that he was inexperienced and new to the crew and instructed him to do so regardless.

62. This entrustment created and appreciable risk of harm to others, including the Plaintiffs and subsequently injured crewmembers.

63. The harm caused to the injured crewmember of Plaintiffs' vessel and damage sustained to the vessel and other related possessions was proximately caused by the negligence of the entrustor and the Defendants.

64. The entrusted Cadet was lacking in experience at the time of the incident described.

65. The entrustor Defendants were in a position of responsibility and should have known of the limited abilities of the Cadet given his limited experience and young age.

66. The Defendants had abandoned the assigned post and duties in order to sleep in the state room prior to the incident consequently entrusting duties to the inexperienced Cadet.

67. The Defendants' negligent entrustment of watch and steering responsibilities resulted in damages to the Plaintiffs' property. The negligent entrustment caused injuries and damages associated with the incident and would not have occurred if not for the negligent actions of the Defendants.

68. Due to the Defendants' negligent entrustment, the Plaintiffs have suffered the following damages:

    a. Lost Wages related to damages sustained to the commercial fishing vessel;
    b. The total loss of the fishing vessel Aunt T. as well as cargo and other related possessions;
    c. Physical and mental injury due to the collision;
    d. Loss of opportunity;
    e. Mental anguish resulting from the incident; and
    f. Associated legal fees and costs.

69. Plaintiffs respectfully request this Court to find Defendants labile for negligent entrustment and to award damages as set forth above, plus incidental, and consequential damages, interest, costs, attorney's fees, and such other damages as the Court deems just and proper.

## FIFTH CAUSE OF ACTION
### (Negligence Per Se-Violation of Rule 2 of U.S.C.G. Navigation Rules: Responsibility)

70. The allegations contained in the foregoing paragraphs are incorporated herein by reference as if fully set forth herein.

71. The Defendants did not have due regard or knowledge of all dangers of navigation and collision and to any special circumstances including the limitations of the vessels involved, which may make a departure from these rules necessary to avoid immediate danger.

72. Due to the Defendants' violation of Rule 2 of the U.S.C.G. Navigation Rules, the Plaintiffs have suffered the following damages:

    a. Lost Wages related to damages sustained to the commercial fishing vessel;
    b. The total loss of the fishing vessel Aunt T. as well as cargo and other related possessions;
    c. Physical and mental injury due to the collision;
    d. Loss of opportunity;
    e. Mental anguish resulting from the incident; and
    f. Associated legal fees and costs.

73. The Plaintiffs respectfully request this Court to find the Defendants liable for violating Rule 2 of the U.S.C.G. Navigation Rules and to award damages as set forth above plus incidental and consequential damages, interest, costs attorney's fees and such other further damages as the Court deems just and proper.

## SIXTH CAUSE OF ACTION
### (Negligence Per Se-Violation of Rule 5 of the U.S.C.G. Navigation Rules: Lookout)

74. The allegations contained in the foregoing paragraphs are incorporated herein by reference as if fully set forth herein.

75. Due to Defendants not maintaining proper watch before and during the time of the incident, the Defendants failed to maintain proper lookout by sight and hearing as well as by all available means appropriate in the prevailing circumstances and conditions as to make a full appraisal of the conditions and situation and of the risk of collision.

76. Due to Defendants' violation of Rule 5 of the U.S.C.G. Navigation Rules, the Plaintiffs have suffered the following damages:

   a. Lost Wages related to damages sustained to the commercial fishing vessel;
   b. The total loss of the fishing vessel Aunt T. as well as cargo and other related possessions;
   c. Physical and mental injury due to the collision;
   d. Loss of opportunity;
   e. Mental anguish resulting from the incident; and
   f. Associated legal fees and costs.

77. The Plaintiffs respectfully request this Court to find the Defendants liable for violating Rule 5 of the U.S.C.G. Navigation Rules and to award damages as set forth above plus incidental and consequential damages, interest, costs attorney's fees and such other further damages as the Court deems just and proper.

## SEVENTH CAUSE OF ACTION
### (Negligence Per Se-Violation of Rule 7 of the U.S.C.G. Navigation Rules: Safe Speed)

78. The allegations contained in the foregoing paragraphs are incorporated herein by reference as if fully set forth herein.

79. Due to the Defendants' negligence before and during the time of the incident by failing to proceed at a safe speed so that the vessel could take proper and effective action to avoid collision

and be stopped within a distance appropriate to the prevailing circumstances, Plaintiffs suffered damages.

80. Due to Defendants' violation of Rule 7 of the U.S.C.G. Navigation Rules the Plaintiffs suffered the following damages:

    a.    Lost Wages related to damages sustained to the commercial fishing vessel;
    b.    The total loss of the fishing vessel Aunt T. as well as cargo and other related possessions;
    c.    Physical and mental injury due to the collision;
    d.    Loss of opportunity;
    e.    Mental anguish resulting from the incident; and
    f.    Associated legal fees and costs.

81. The Plaintiffs respectfully request this Court to find the Defendants liable for violating Rule 7 of the U.S.C.G. Navigation Rules and to award damages as set forth above plus incidental and consequential damages, interest, costs attorney's fees and such other further damages as the Court deems just and proper.

## EIGHTH CAUSE OF ACTION
**(Negligence Per Se-Violation of Rule 7 OF U.S.C.G. Navigation Rules: Risk of Collision)**

82. The allegations contained in the foregoing paragraphs are incorporated herein by reference as if fully set forth herein.

83. Defendants failed to use all available means appropriate to the prevailing circumstances and conditions to determine if the risk of collision existed at the time prior to and during the incident.

84. Defendants failed to make proper use of radar equipment when it was fitted and fully operational, including long-range scanning to obtain early warning of risk of collision and radar plotting or equivalent systematic observation of detected objects.

85. Defendants made assumptions of safety based on scanty radar information.

86. Due to Defendants' violation of Rule 7 of the U.S.C.G. Navigation Rules, the Plaintiffs have suffered the following damages:

   a. Lost Wages related to damages sustained to the commercial fishing vessel;
   b. The total loss of the fishing vessel Aunt T. as well as cargo and other related possessions;
   c. Physical and mental injury due to the collision;
   d. Loss of opportunity;
   e. Mental anguish resulting from the incident; and
   f. Associated legal fees and costs.

87. The Plaintiffs respectfully request this Court to find the Defendants liable for violating Rule 7 of the U.S.C.G. Navigation Rules and to award damages as set forth above plus incidental and consequential damages, interest, costs attorney's fees and such other further damages as the Court deems just and proper.

### NINTH CAUSE OF ACTION
**(Negligence Per Se-Violation of Rule 18 of U.S.C.G Navigation Rules: Responsibilities Between Vessels)**

88. The allegations contained in the foregoing paragraphs are incorporated herein by reference as if fully set forth herein.

89. The Defendants failed to avoid a vessel engaged in fishing activities.

90. Defendants failed to avoid a vessel anchored at sea.

91. Due to the Defendants' violation of Rule 18 of the U.S.C.G Navigation Rules, the Plaintiffs have suffered the following damages:

   a. Lost Wages related to damages sustained to the commercial fishing vessel;
   b. The total loss of the fishing vessel Aunt T. as well as cargo and other related possessions;
   c. Physical and mental injury due to the collision;
   d. Loss of opportunity;
   e. Mental anguish resulting from the incident; and
   f. Associated legal fees and costs.

92. The Plaintiffs respectfully request this Court to find the Defendants liable for violating Rule 18 of the U.S.C.G. Navigation Rules and to award damages as set forth above plus incidental and consequential damages, interest, costs attorney's fees and such other further damages as the Court deems just and proper.

## TENTH CAUSE OF ACTION *in Rem*
### (As to Defendant M/V AS SAMANTA (formerly Maersk Weymouth)

93. The allegations contained in the foregoing paragraphs are incorporated herein by reference as if fully set forth herein.

94. Defendant's unseaworthiness consisted of, but was not limited to the following;

   a. No proper lookout;
   b. No warning horn;
   c. Improper training of crew;
   d. Improper supervision of crew;
   e. No functioning radar;
   f. Inadequate or nonfunctioning spotlights;
   g. Failure to have properly trained and competent Master and crew to navigate a vessel; and
   h. All other acts of unseaworthiness that will be shown at the Trial of this matter.

95. The Defendant allowed the unseaworthy defects to remain unrepaired.

96. The Defendant failed to comply with inspection standards and manning requirements for an ocean-going vessel of its size.

97. The Defendant's noncompliance to inspection standards and manning requirements are the proximate cause of Plaintiffs' damages.

98. The Plaintiffs were not contributorily negligent in bringing about the damages.

99. The Plaintiffs suffered damages as a direct and proximate result of Defendants' negligence.

## ELEVENTH CAUSE OF ACTION
### (Under General Maritime Law)

100. The allegations contained in the foregoing paragraphs are incorporated herein by reference as if fully set forth herein.

101. Under General Maritime Law, all Defendants failed to comply with inspection standards or manning requirements or by a known defect in the vessel. 46 U.S.C. § 30102; *see id.* §§ 3101-4705, 8101-9308:

   a. No proper lookout;
   b. No warning horn;
   c. Improper training of crew;
   d. Improper supervision of crew;
   e. No functioning radar;
   f. Inadequate or nonfunctioning spotlights;
   g. Failure to have properly trained and competent Master and crew to navigate a vessel; and
   h. All other acts of unseaworthiness that will be shown at the Trial of this matter.

102. Defendants allowed the unseaworthy defects to remain unrepaired.

103. Defendants failed to comply with inspection standards and manning requirements for an ocean-going vessel.

104. Defendants' noncompliance to inspection standards and manning requirements are the proximate cause of Plaintiffs' damages.

105. Plaintiffs were not contributorily negligent bringing about the damages.

106. Plaintiffs suffered damages as a direct and proximate result of Defendants' negligence.

## TWELFTH CAUSE OF ACTION
### (Respondeat Superior)

107. The allegations contained in the foregoing paragraphs are incorporated herein by reference as if fully set forth herein.

108.    The modern doctrine of respondeat superior makes a Master liable to a third party for injuries caused by the tort of his servant committed within the scope of the servant's employment. <u>Froneberger v. Kirkland Dale Smith, Janel Elizabeth Smith and Euro Mortg. Bankers, Inc.,</u> 406 S.C. 37, 748 S.E. 2nd 625 (S.C. App., 2013).

109.    At the time of the incident all personnel were employees, agents or otherwise under the control of the Defendants.

110.    The M/V Maersk Weymouth was owned and operated by the Defendants.

111.    The Plaintiffs are entitled to judgment against the Defendants under the doctrine of respondeat superior for actual, compensatory, and exemplary or punitive damages for any all damages set forth herein in an amount that is fair, just, and reasonable under the circumstances.

## THIRTEENTH CAUSE OF ACTION
**(Unseaworthiness)**

112.    The allegations contained in the foregoing paragraphs are incorporated herein by reference as if fully set forth herein.

113.    The Plaintiffs' injuries and damages were caused by the unseaworthiness of the vessel owned and operated by the Defendants, which consisted of, but not limited to:

   a.   No proper lookout;
   b.   No warning horn;
   c.   Improper training of crew;
   d.   Improper supervision of crew;
   e.   No functioning radar;
   f.   Inadequate or nonfunctioning spotlights;
   g.   Failure to have properly trained and competent Master and crew to navigate a vessel; and
   h.   All other acts of unseaworthiness that will be shown at the Trial of this matter.

114.    Defendants allowed the unseaworthy defects to remain unrepaired.

115.    The Defendants failed to comply with inspection standards and manning requirements for an ocean-going vessel of its size.

116.    The Defendants' noncompliance to inspection standards and manning requirements are the proximate cause of Plaintiffs' damages.

117.    Plaintiffs suffered damages as a direct and proximate result of Defendants' unseaworthiness.

## FOURTEENTH CAUSE OF ACTION
### (Maritime Lien)

118.    Plaintiffs refer to and incorporate herein by this reference each and every allegation of the foregoing paragraphs as though fully set forth herein.

119.    As a result of Plaintiffs' damages, no part of which has been paid, they are entitled to an award of actual damages to be determined by this Court, pre-judgment interest from the date of the incident and the cost of this action.

120.    Plaintiffs have the right to have M/V AS SAMANTA arrested and sold to enforce maritime liens.

121.    All and singular the foregoing premises are true and correct and within the admiralty jurisdiction of this Honorable Court.

## PLAINTIFFS' PRAYER

**WHEREFORE,** based on the foregoing, Plaintiffs pray:

a.    That their Complaint be deemed good and sufficient;
b.    That process and due form of law, according to the practice of this Honorable Court, issue against Defendants citing them to appear and answer under oath, all and singular the allegations of aforesaid;
c.    The Plaintiffs may have judgment in their favor, as Plaintiffs, against Defendants for all legal and allowable damages arising out of the aforesaid matter, plus pre-judgment interest, costs of this action and reasonable attorney's fees;
d.    That the subject that process in due form of law, according to the Federal Rules of Civil Procedure and Supplemental Rules of Admiralty and Maritime Claims, issue against M/V AS

SAMANTA, her engines, tackle, apparel, etc., *in rem*, citing all persons having or claiming any interest therein to appear and answer all and singular, the matters aforesaid;

e.  That Plaintiffs' lien be declared a valid and subsisting tort lien on the whole of Defendant vessel, her engines, apparel, appurtenances, tackles, etc.;

f.  That Defendants' vessel be condemned and sold free and clear of all liens and encumbrances to satisfy the judgment herein;

g.  That Plaintiffs' maritime lien be recognized, enforced and paid by preference and priority over all other claimants and/or intervenors herein;

h.  That all expert fees be taxed as costs; and

i.  such for other and further relief as this Court deems just and proper.

                                Respectfully submitted,
                                **GOLDFINCH WINSLOW, LLC**

                        By: s/Thomas W. Winslow, Esq.
                                Thomas W. Winslow, Esq.  (#9740)
                                11019 Ocean Highway
                                Pawleys Island, SC 29585
                                (p) (843) 357-9301
                                (f) (843) 357-9303
                                tom@goldfinchwinslow.com
                                ATTORNEYS FOR PLAINTIFFS